Mark K. Schonfeld (MS-2798)
Regional Director

Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
Northeast Regional Office
3 World Financial Center – Rm 4300
New York, NY 10281
(212) 336-0157 (Ryan)



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,

                          Plaintiff,

           - against -

COBALT MULTIFAMILY INVESTORS I, LLC,
COBALT MULTIFAMILY CO. I, LLC,
COBALT CAPITAL FUNDING, LLC,
MARK A. SHAPIRO, IRVING J. STITSKY,
and WILLIAM B. FOSTER,

                    Defendants, and

VAIL MOUNTAIN TRUST,

                    Relief Defendant.

------------------------------------------------------------------x

06 CV 2360

06 Civ.  (   )

**COMPLAINT**

Plaintiff Securities and Exchange Commission, for its Complaint against defendants Cobalt Multifamily Investors I, LLC ("Cobalt Multifamily" or "the Company"), Cobalt Multifamily Co. I, LLC ("Cobalt Co."), Cobalt Capital Funding, LLC ("Cobalt Funding"), Mark A. Shapiro, Irving J. Stitsky, and William B. Foster (collectively, "Defendants") and relief defendant Vail Mountain Trust ("Vail" or "Relief Defendant"), alleges as follows:

## SUMMARY

1.        This action arises out of an ongoing fraudulent offering of securities by Cobalt

Multifamily, one of a network of affiliated companies (collectively, "Cobalt") controlled by

convicted felon Mark A. Shapiro. Since approximately July 2004, Cobalt Multifamily has raised

over $16 million from at least 150 investors on the basis of misrepresentations and omissions in

its offering and marketing materials and through boiler room sales tactics overseen by Stitsky,

another convicted felon and a multiple recidivist. Among other things, Defendants have: (a)

misrepresented Cobalt's track record and ongoing operations; (b) concealed Shapiro's and

Stitsky's roles and criminal backgrounds and promoted the false impression that Foster runs the

Company; (c) misappropriated at least $2.6 million of investor funds; and (d) operated Cobalt

Multifamily as a Ponzi scheme, using funds of later investors to pay earlier investors a promised

8% annual return. The offering is ongoing – Cobalt has continued to raise funds from investors,

even after the execution of search warrants at its offices in December 2005, and has sought

additional investments at least as recently as early March 2006.

2.        Through this conduct, Defendants have engaged, directly or indirectly, in

transactions, acts, practices, and courses of business which constitute violations of Section 17(a)

of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), and Section 10(b) of the

Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5

thereunder, 17 C.F.R. § 240.10b-5. In addition, Defendants have violated Sections 5(a) and (c)

of the Securities Act, Cobalt Funding and Stitsky have violated Section 15(a) of the Exchange

Act, and Stitsky has unlawfully associated with a broker-dealer in contravention of Commission

orders barring him from such association.

2

3.      Unless restrained and enjoined by this Court, Defendants will continue to engage in the transactions, acts, practices and courses of business alleged herein, and in transactions, acts, practices, and courses of business of a similar type and object.

4.      By this action, the Commission seeks:  (a) permanent injunctive relief; (b) disgorgement and prejudgment interest; (c) civil penalties; (d) emergency and preliminary relief including (i) a temporary restraining order and preliminary injunction, (ii) asset freezes, (iii) the appointment of a temporary receiver, and (iv) orders requiring Defendants to provide sworn accountings, permitting expedited discovery, and prohibiting the destruction of documents; and (e) such further relief as the Court may deem appropriate.

## JURISDICTION

5.      The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act, 15 U.S.C § 77t(b), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).   This Court has subject matter jurisdiction over this action pursuant to Sections 20(d) and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(d) and 77v(a), and Sections 21(e) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(e) and 78aa.

6.      Each of the Defendants, directly and indirectly, singly and in concert, has made use of the means or instruments of transportation or communication in interstate commerce, or of the mails, or the facilities of a national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged herein.

## THE DEFENDANTS

7.      **Cobalt Multifamily** is limited liability company organized under Delaware law with its principal place of business in Springfield, Massachusetts.  The Company is purportedly

3

engaged in the acquisition and development of multifamily properties throughout the United States, including the rehabilitation and conversion of such properties into condominium-hotels. The Company has issued four classes of limited liability membership interests: A, B, C, and D. The Class A members are public investors; the Class B, C, and D members are other Cobalt entities identified below. The Company has never registered an offering or class of securities under the Securities Act or the Exchange Act.

8.     **Cobalt Co.** is a limited liability company organized under Delaware law and is identified in offering materials as the "Manager" of Cobalt Multifamily and Class D member.

9.     **Cobalt Funding** is a limited liability company organized under Delaware law with its principal place of business in Great Neck, New York. Cobalt Funding is the Class B member and the Company's sales arm – the entity through which the Class A interests are marketed and sold. Cobalt Funding is purportedly owned by Cobalt Capital Partners, L.P. ("Cobalt Capital"). In addition to its office in Great Neck, New York, since approximately March 2005, Cobalt Funding has operated a second sales office in Miami, Florida.

10.    **Shapiro**, age 47, is a resident of Glastonbury, Connecticut. Personally or through Vail, Shapiro controls all the Cobalt entities. In December 1998, Shapiro pleaded guilty to one count of bank fraud and one count of conspiracy to commit tax fraud. He was sentenced to serve thirty months in prison and ordered to pay restitution of $353,896 and a fine of $10,000. See United States v. Mark Shapiro, 98 CR 242 (D. Conn.) (DJS).

11.    **Stitsky**, age 51, is a resident of Bayside, New York. Stitsky runs Cobalt Funding, and is responsible for recruiting, training, and overseeing the sales force. Stitsky has an extensive criminal and disciplinary history. In 1998, on the basis of his conduct in the early-

4

1990s while associated with Stratton Oakmont, Inc., a notorious boiler-room, Stitsky consented

to a Commission order finding that he had violated the antifraud provisions of the Securities and

Exchange Acts, and barring him from association with any broker, dealer, investment company,

investment adviser, or municipal securities dealer.  See Eric S. Blumen, Exchange Act Release

No. 40333 (Aug. 18, 1998).  Stitsky was subsequently charged for his role in another

manipulation scheme in which he participated shortly after he left Stratton.  He pleaded guilty to

related criminal charges, including conspiracy to commit securities fraud, and was sentenced to

twenty-one months imprisonment and a three-year period of supervised release in United States

v. Dacunto, et al., 00 CR. 620 (S.D.N.Y.).  In the Commission's administrative proceeding

against him, Stitsky was again found to have violated the antifraud provisions of the Securities

and Exchange Acts, barred from participating in a penny stock offering and again barred from

associating with a broker or dealer.  See Salvatore Piazza, Exchange Act Release No. 48497

(September 17, 2003).  Stitsky has been the subject of at least two other Commission

enforcement actions and two other criminal cases, all of which arose from his role in securities

fraud schemes, including one currently pending against him, United States v. Collardeau et al.,

CR 03-800 (D.N.J.).

　　　12.　　**Foster**, age, 66, is a resident of Williamsburg, Massachusetts.  Foster is identified

in Company offering memoranda and other materials as the owner, president and chief executive

officer of Cobalt Financial, Inc. ("Cobalt Financial"), the entity that purportedly runs Cobalt

Multifamily.  Foster has signed all corporate documents, contracts, and investor subscription

documents on behalf of the various Cobalt entities.

## THE RELIEF DEFENDANT

13.    **Vail** is a trust organized under Connecticut law.  Robert F. Cohen, a Connecticut

attorney, is the trustee but Shapiro controls Vail.  Vail is purportedly the 80% owner of Cobalt

Financial and the 79% owner of Cobalt Capital, the two entities that purportedly own the entities

that are responsible for managing Cobalt's operations: Cobalt Co., Cobalt Funding, Cobalt

Property Services, LLC ("Cobalt Property"), and Cobalt Construction Services, LLC ("Cobalt

Construction").

## RELATED ENTITIES

14.    **Cobalt Capital** is a limited partnership organized under Delaware law with its

principal place of business in Springfield, Massachusetts.  Cobalt Capital purportedly owns

Cobalt Co., the manager of the Company, and Cobalt Funding.

15.    **Cobalt Financial** is corporation organized under Delaware law with its principal

place of business in Springfield, Massachusetts, and is identified in the Cobalt offering materials

as the "Manager" of Cobalt Co., the "Manager" of Cobalt Multifamily.   Cobalt Financial is

purportedly owned and controlled by Foster.

16.    **Cobalt Construction** is a limited liability company organized under Delaware

law with its principal place of business in Springfield, Massachusetts.  It is purportedly owned by

Cobalt Capital.

17.    **Cobalt Property** is a limited liability company organized under Delaware law

with its principal place of business in Springfield, Massachusetts.  It is purportedly owned by

Cobalt Capital.

## FACTS

18.   Since approximately July 2004, Cobalt Multifamily has raised more than $15 million from at least 150 investors through an offering of Class A Limited Liability Company Membership Interests (the "Class A Interests"). The Class A Interests are priced at $100,000 per unit, but investors are permitted to purchase partial units and many have done so.

19.   In exchange for their investment, investors are promised an 8% annual return on their investment, payable semi-annually, which the offering materials refer to a "Priority Return." Investors have the option of reinvesting their Priority Return, and some have done so. In addition to the Priority Return, investors are entitled to receive a share of the profits from the sale or management of properties.

20.   The Company has also raised at least $900,000 through purported joint ventures, in which investors have entrusted funds to the Company for investment in specific development projects to be managed by Cobalt.

21.   The offering is marketed and sold out of the Cobalt Funding sales offices in Great Neck and Miami. Since at least September 2004, Stitsky has run the sales operation. He recruits, trains, and oversees the salespeople. In addition, Stitsky directly participates in the sales effort by, for example, meeting with prospective investors to persuade them to invest.

22.   Cobalt Funding salespeople identify and solicit investments in Cobalt Multifamily and process the sale of Class A Interests and other Company securities. In return, Cobalt Funding is entitled to a "Sales Compensation Fee" equal to 9% of the purchase price of the Class A interests. The sales force is paid on commission.

23.   Cobalt Funding identifies prospective investors by various means, including but

not limited to advertisements in newspapers and magazines, cold-calling and participation in
business networking events.

24.    To induce them to invest, prospective investors are provided with glossy
brochures and other marketing materials (collectively, "Marketing Materials") and one of two
private placement memoranda, the first dated July 1, 2004 and the second dated December 15,
2004. (The private placement memoranda ("Offering Memoranda") and the Marketing
Materials are collectively referred to in this Complaint as the "Offering Materials.") The
Offering Materials are false and misleading in numerous respects.

**Defendants Have Misrepresented Cobalt's Track Record and Ongoing Operations**

25.    Through the brochures and other Marketing Materials, Defendants represent that
Cobalt is a nationally recognized real estate investment and property management firm run by
real estate professionals with a long and highly successful track record.   For example:

- Glossy brochures provided to prospective investors describe the Company as "an
  outgrowth of, and successors to, a group of earlier real estate entities, most
  notably Capital Construction, Inc." and represent that Cobalt is "comprised of
  seasoned, business-oriented individuals who have owned, managed and developed
  more than $2 billion worth of real estate," over the past twenty-five (or, in some
  materials, thirty) years.

- To bolster Cobalt's claimed track record, sales people provide prospective
  investors with illustrations depicting tombstone ads showing the purchase and sale
  prices for eight extremely profitable "private joint ventures" that were purportedly
  "sponsored by Cobalt Capital Companies" in the late 1990s.

8

●     Prospective investors are sent a four-page "Cobalt Capital Portfolio Summary" that shows the status and purported appreciated value or sale price of over fifty properties. All but five of the listed properties were purportedly acquired in the 1980s and 90s and sold by 2003, at extremely impressive returns. The listed "average annual return" ranges from 9% to 204% over periods ranging from one to twelve years, including several with average annual returns of more than 200% in less than two years.

26.     These representations about Cobalt's history are false and misleading. In fact, Cobalt has no track record; it is a two-year-old start-up company with no operating history. All the Cobalt entities were incorporated in late-2003 or later, and all the personnel involved with the marketing and management of the Company, including Shapiro, Stitsky, and Foster, joined the Company within the last two years. Except for two of the numerous properties identified in the "Portfolio Summary," none of the listed properties has ever been owned by Cobalt or a predecessor to Cobalt.

27.     The marketing materials also misrepresent the current state of Cobalt's business. For example, the Portfolio Summary and other materials distributed to prospective investors in 2005 indicate that, since 2001, Cobalt has owned five properties in Miami Beach (including one formerly known as the Simone Hotel) that are in various stages of development, that each had appreciated in value, and they were then collectively worth $43.3 million. In fact, the only properties Cobalt has ever owned were acquired in 2005 and Cobalt has defaulted, or is on the verge of defaulting, on the mortgages for those properties.

28.     Directly and through Cobalt Funding salespeople, Defendants have made similar

9

misrepresentations in oral sales presentations. For example, Stitsky has told at least one

prospective investor that Cobalt had redeveloped a successful hotel in Miami called the Mercury,

which is not true. Salespeople have also frequently led prospective investors to believe that

Cobalt had purchased the Simone Hotel and that its value had already doubled, when in fact

Cobalt has never owned the property.

29.     The Company is in precarious financial conduction. It has failed to make

mortgage payments on the properties it has purchased and has failed to meet other financial

obligations on time. Neither the true status of the properties nor the Company's financial

condition has been disclosed to investors or prospective investors.

**Defendants Conceal Shapiro's and Stitsky's Roles and Backgrounds**

30.     The Marketing Materials also extol the Company's honesty and integrity, saying

for example:

> [a] careful reading of this brochure and the attached Private Placement Memorandum will
> demonstrate Cobalt's proven commitment to honest business practices and integrity
> above all else.
>
>        . . . .
>
> As the new millennium approached, the time was right to create a new identity for the
> maturing company and the name "Cobalt" was selected. . . . . This fit well with the
> company's devotion to thoughtful analysis and its relentless requirement for high ethics in
> all its business dealings.

These statements are false and misleading because at least two of the individuals who control the

Company and its dealings with investors – Shapiro and Stitsky – have been convicted of fraud,

and their roles and backgrounds are not disclosed to investors.

31.     Through the Offering Memoranda, Defendants create the false impression that

Foster runs Cobalt and that Shapiro has little, if any, role in the management of the Company.

For example:

- The Offering Memoranda describe a multi-layered ownership and management structure whereby identified Company affiliates "will control all aspects of [the Company's] operation, including (but not limited to) capital formation, acquisition and/or development, management (except where third-party management is utilized) and construction."

- Foster is identified in the Offering Memoranda as the "owner, President and CEO of Cobalt Financial," and the person "in charge of overseeing all aspects of the [Company's] Manager and its Affiliates."

- Foster signs all Cobalt corporate documents, contracts and investor subscription agreements on Cobalt's behalf.

- Shapiro is not mentioned at all in the first Offering Memorandum.

- In the second Offering Memorandum, Shapiro is identified only as a "consultant" who "assists in structuring of the financing for the Cobalt Capital Companies."

- Vail is not mentioned in any of the Offering Materials.

32.    In fact, Shapiro controls Cobalt.  He runs its day-to-day operations and makes all significant business decisions for the Company and the affiliated Cobalt entities and, personally or through Vail, controls a majority interest in all the Cobalt entities.   Foster is the president and CEO in name only and at most has a 20% ownership in Cobalt Financial.

33.    Moreover, to the extent that Shapiro is identified in the second Offering Memorandum, Defendants misrepresent his background.  The Offering Materials do not disclose

Shapiro's criminal conviction for bank fraud and conspiracy to commit tax fraud. In addition, the second Offering Memorandum, the only document provided to prospective investors that mentions Shapiro, states that Shapiro "received his undergraduate degree from the University of Miami and a Masters in Finance from Harvard University." In fact, Shapiro does not have an undergraduate degree from the University of Miami and does not have a "Masters in Finance," or any other degree, from Harvard University.

34.     Defendants also fail to disclose Stitsky's role and background. None of the Offering Materials disclose Stitsky's involvement with Cobalt. Instead, the Offering Memoranda identify two other individuals as "Assistant Vice Presidents of Cobalt Funding." In fact, Stitsky runs Cobalt Funding, and hires, trains, and oversees the salespeople.

35.     The facts about Shapiro's control of Cobalt and his criminal conviction, and Stitsky's control of the solicitation of investors and his criminal and disciplinary history, are not otherwise disclosed. Indeed, salespeople are instructed not to reveal to investors and prospective investors Shapiro's involvement with Cobalt.

**Defendants Have Misappropriated At Least $2.6 Million of Investor Funds**

36.     Although the Offering Materials disclose that significant amounts will be paid to various Cobalt entities for certain fees and expenses, Defendants have taken investor funds well in excess of those amounts and used those funds and additional investor funds for purposes not disclosed in the Offering Materials. For example:

- The Offering Memoranda specify that a 9% "Acquisition Fee" fee will be deducted from each investment and paid to Cobalt Capital. In fact, amounts well in excess of 9% – often as much as 20% – have routinely been deducted from

12

investments and transferred to Cobalt Capital.  At least $1.65 million has been paid to Cobalt Capital in excess of the disclosed acquisition fee.  This amount, in turn, has been transferred to Vail and Foster.

- The Offering Memoranda disclose that Cobalt Funding will receive a 9% "Sales Compensation" Fee.  However, at least $650,000 has been transferred to Cobalt Funding in excess of the disclosed sales compensation fee.

37.     Although Shapiro's control of the Cobalt entities has not been disclosed to investors, at least $ 2.6 million in investor funds have been paid to him or for his benefit.  Of that amount, at least $2.4 million was paid to Vail, at least $240,000 was spent on construction of his home, and additional amounts were used to pay his personal credit card bills, including bills for payments on the Porsche and Land Rover automobiles he drives.   Shapiro directed that the amounts in excess of disclosed fees be disbursed to him, to Vail, and to Foster, and that investor funds be used to pay his personal credit card expenses.

**Defendants Have Operated the Company as a Ponzi Scheme – Using the Funds of Later Investors to Pay the Promised 8% Priority Return to Earlier Investors**

38.     The Offering Memoranda and Marketing Materials lead investors to believe that the promised Priority Return will be funded by cash flow from operations and proceeds of the sale or management of properties.  Since its inception, Cobalt's only cash flow has been the monies raised from investors.  Yet, at least $400,000 has been paid out to investors as their 8% annual "Priority Return."  Thus, investor funds are being used to pay promised returns, contrary to the representations in the Offering Materials.

39.     The Offering Memoranda also represent that investor funds will be held in escrow

13

until the minimum offering has been sold and $2 million has been raised. In fact, investor funds were not held in escrow until the minimum offering had been sold.

## FIRST CLAIM FOR RELIEF
### (Against All Defendants)

**Violations of Section 17(a) of the Securities Act,
Section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder**

40.     The Commission realleges and incorporates paragraphs 1 through 39 as if fully set forth herein.

41.     The Class A Interests and joint venture interests purchased by investors are securities within the meaning of Section 2(1) of the Securities Act, 15 U.S.C. § 77b(1), and Section 3(a)(10) of the Exchange Act, 15 U.S.C. § 78c(a)(10).

42.     Defendants knew or recklessly disregarded that the above representations to prospective investors about Cobalt Multifamily's track record and financial condition, about Shapiro's background, about the amounts paid to Cobalt Capital and Cobalt Funding, and about the source of Priority Returns were false and misleading, and they knew or recklessly disregarded that Shapiro's and Stitsky's true roles and background were not disclosed to investors. Among other reasons:

- As Cobalt's founder and the person in control of the Company, Shapiro was aware of the true experience of the Company and its principals and of the true status of the Company's business and its financial condition.

- Shapiro also controlled the disposition of Company funds and was told that the amounts he directed be paid to various Cobalt affiliates exceeded the amounts to which they were entitled under the terms of the Offering Memoranda.

- Shapiro and Foster were warned in a September 22, 2004 letter from a consultant to the Company that the Company's disclosure documents might be inaccurate and misleading because they failed to disclose Shapiro's and Stitsky's involvement and background, including the Commission sanctions against Stitsky.

- Salespeople working under Stitsky's supervision were instructed and understood that Shapiro's involvement was not to be disclosed to prospective investors because of his criminal history.

- Foster was aware of Shapiro's criminal conviction having done business with Shapiro before he went to prison and having often visited Shapiro in prison.

The conduct and knowledge of Shapiro, Stitsky, and Foster are attributable to Cobalt Multifamily, Cobalt Co., and Cobalt Funding.

43.     The true facts about Cobalt's track record and financial condition, about Shapiro's and Stitsky's roles and backgrounds, about the failure to escrow funds until the minimum offering was sold, about the excessive amounts paid to Cobalt Capital and Cobalt Funding, about the use of investor funds to pay Shapiro's personal expenses, and about the use of investor funds to pay the promised Priority Return to investors would have been important to investors.

44.     Since at least July 2004 and continuing until the present, Defendants, directly and indirectly, in the offer or sale, and in connection with the purchase or sale, of securities, by the use of the means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, and the mails, have: (a) employed devices, schemes, and artifices to defraud; (b) obtained money or property by means of, or otherwise made, untrue statements of material fact or omitted to state material facts necessary in order to make the

15

statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, acts, practices and courses of business which operated as a fraud or deceit upon purchasers of the Class A Interests and other securities issued by Cobalt Multifamily.

45.     By reason of the foregoing, Defendant have engaged and, unless restrained and enjoined ,will continue to engage, directly or indirectly, in transactions, acts, practices and courses of business which constitute violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

### SECOND CLAIM FOR RELIEF
### (Against All Defendants)

### Violations of Sections 5(a) and 5(c) of the Securities Act

46.     The Commission realleges and incorporates paragraphs 1 through 45 as if fully set forth herein.

47.     From at least July 2004 to the present, while no registration statement was filed with the Commission or was in effect, Defendants, directly or indirectly, offered and sold Class A Interests and other securities to the public.

48.     In offering and selling the Cobalt Multifamily securities, Defendants have used means or instruments of transportation or communication in interstate commerce, or the mails.

49.     By reason of the foregoing, Defendants have engaged and, unless restrained enjoined, will continue to engage, directly or indirectly in transactions, acts, practices and courses

16

of business which constitute violations of Sections 5(a) and 5(c) of the Securities Act,15 U.S.C. §§77e(a) and 77e(c).

### THIRD CLAIM FOR RELIEF
#### (Against Cobalt Funding and Stitsky)

### Violations of Section 15(a) of the Exchange Act

50.     The Commission realleges and incorporates paragraphs 1 through 49 as if fully set forth herein.

51.     Cobalt Funding and Stitsky were engaged and continue to engage in soliciting purchases of, and effecting transactions in, Class A interests and other securities issued by Cobalt Multifamily and received compensation based on those transactions.  Neither Cobalt Funding nor Stitsky was registered as a broker or dealer and Stitsky and the other salespeople were not associated persons of a registered broker or dealer.

52.     Defendants Stitsky and Cobalt Funding, by use of the mails and the means or instrumentalities of interstate commerce, while acting as brokers and while engaged in the business of effecting transactions in securities for the accounts of others otherwise than through a national securities exchange, effected transactions in, or induced or attempted to induce the purchase or sale of securities (other than an exempted security or commercial paper, banker's acceptances, or commercial bills) without registering as a broker or dealer in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b).

53.     By reason of the foregoing, Cobalt Funding and Stitsky, violated, and, unless restrained and enjoined, will continue to violate Section 15(a) of the Exchange Act, 15  U.S.C. § 78o(a) .

17

## FOURTH CLAIM FOR RELIEF
### (Against Stitsky)

### Violations of Commission Orders

54.     The Commission realleges and incorporates paragraphs 1 through 53 as if fully set forth herein.

55.     On August 18, 1998, the Commission issued an Order Making Findings and Imposing Remedial Sanctions and a Cease-and-Desist Order against Stitsky and two other individuals (the "1998 Commission Order").  Among other things, the 1998 Commission Order barred Stitsky from association with any broker or dealer.   On September 11, 2003, a Commission hearing officer issued an Order Making Findings and Imposing Remedial Sanctions by Default against Stitsky and twenty-seven other individuals (the "2003 Commission Order"). Among other things, the 2003 Commission order barred Stitsky from association with any broker or dealer.

56.     Stitsky has associated with Cobalt Funding, an unregistered broker.

57.     Because of his association with Cobalt Funding, Stitisky violated, and unless restrained and enjoined will continue to violate, the 1998 and 2003 Commission Orders.

## FIFTH CLAIM FOR RELIEF
### (Against Relief Defendant Vail)

58.     The Commission realleges and incorporates paragraphs 1 through 57 as if fully set forth herein.

59.     By reason of the acts, omissions, practices and courses of business set forth in this Complaint, Shapiro violated Sections 5(a) and (c) and 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.   Some of the proceeds of Shapiro's

violative conduct remain in the possession and control of Vail.

60.     Relief Defendant Vail received, for no or only nominal consideration, the proceeds of the fraudulent sale of securities issued by Cobalt Multifamily.  Vail profited from such receipt by obtaining illegal proceeds under circumstances in which it is not just, equitable or conscionable for Vail to retain the illegal proceeds.  Consequently, Vail has been named as a relief defendant for the amount of proceeds of the fraudulent conduct by which it has been unjustly enriched as a result of the fraudulent schemes, which is at least $2.4 million.

### **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

1.     Enter a Final Judgment:

(a)     permanently restraining and enjoining Defendants, their agents, servants, employees, attorneys, and all persons or entities in active concert or participation with him who receive actual notice of the injunction by personal service, express courier service, facsimile, or otherwise, and each of them, from violating Sections 5(a) and 5(c) and 17(a) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c), and 77q(a); Section 10(b) of the Exchange and Rule 10b-5 ed thereunder, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5; and permanently restraining and enjoining Stitsky and Cobalt Funding, their agents, servants, employees, attorneys, and all persons or entities in active concert or participation with him who receive actual notice of the injunction by personal service, express courier service, facsimile, or otherwise, and each of them, from violating Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a);

(b)     pursuant to Section 21(e) of the Exchange Act, commanding Stitsky to comply with the 1998 and 2003 Commission Orders;

19

(c)    directing Defendants to disgorge their ill-gotten gains from the unlawful conduct alleged in this Complaint, and to pay prejudgment interest thereon; and

(d)    directing Defendants to pay civil monetary penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d), and Section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9(e), for the violations alleged herein.

(e)    Directing Vail to disgorge those proceeds of fraudulent conduct it has received;

2.    Grant the temporary and preliminary relief sought by the Commission in the application filed herewith; and

3.      Grant such other and further relief as the Court deems appropriate.

Dated: March 27, 2006
New York, New York

                                    Respectfully submitted,

                                    Mark K. Schonfeld (MS- 2798)
                                    Regional Director
                                    Attorney For Plaintiff
                                    SECURITIES AND EXCHANGE
                                    COMMISSION
                                    Northeast Regional Office
                                    3 World Financial Center
                                    New York, New York  10281
                                    Telephone No.: (212) 336-0157 (Ryan)

Of Counsel:

        Andrew M. Calamari
        Leslie Kazon
        Gerald J. Russello
        Paul Ryan
        Allan Kahn